ALFRED C. WALTON

*v.*

WILLIAM P. WALTON et al.

1. On application to hold a party for contempt, any facts existing when the application is made which would support a motion to release from custody, ought to be shown in answer to the application.

2. Where the decree only directs the payment of money, it is a sufficient answer to an application to hold the defendant for contempt for non-perform-

ance, to show that he is, in good faith, unable to perform the command of the decree.

3. A final decree solely for payment of money declared to be due on contract, will not be enforced by attachment for contempt, unless special equities or fraudulent conduct requiring the use of this remedy be shown to exist.

*Messrs. Barton & Dawes,* for the petitioner, John Wright.

*Mr. Edwin Robert Walker* and *Mr. Garret D. W. Vroom,* for the defendant W. P. Walton.

GREY, V. C.

This is an application for an order to attach the defendant William P. Walton as for a contempt for disobeying an amended decree made in this court in this cause on April 21st, 1896, and duly served upon him, directing him, within two days after such service, to pay to the petitioner, John Wright, trustee &c., the sum of $1,938.76, with interest from August 1st, 1892, and further directing him and one Jacob Vreeland, Jr., to pay costs and counsel fee.

The facts shown upon which it is claimed the defendant William P. Walton should be attached are these:

William P. Walton was executor of the will of his father, William Walton, who died in the year 1876. By the will the executor was directed to pay $2,800 into the hands of Jacob Vreeland, Jr. (also a defendant in this suit), and Vreeland was directed to pay the interest thereof to the complainant, Alfred C. Walton, quarterly, during his life, and if he married and left heirs, at his death, to pay the principal sum

"to said heir or heirs, as the case may be, but in case he should die without any heirs, then the said sum of $2,800 to be equally divided between my [testator's] other children."

Vreeland was a son-in-law of the testator, and at the time of the settlement of the estate, March, 1878, was worth $13,000.

The executor, by arrangement with Vreeland, and by his direction in settlement of this legacy, paid over $1,938.76 (part of this $2,800) to several of Vreeland's creditors, on whose claims he (the executor) was surety, and paid only the residue, $861.24, directly to Vreeland himself.

Vreeland, as part of this settlement, gave to the executor a bond and mortgage, conditioned that he (Vreeland) should pay the interest as above stated to Alfred, and the $2,800 principal to his heirs, and in default of heirs to the testator's children, as prescribed in the will.

In 1881 the executor consulted counsel regarding his responsibility under the will as to this legacy. He stated to the lawyer whom he consulted that he had paid the money into the hands of Vreeland, and was advised that Vreeland was trustee, and that he, and not the executor, was responsible for the money, and that Vreeland was not bound to give any mortgage securing it. There seems to have been no disclosure by the executor to his counsel, of the fact that the larger part of the legacy had, by Vreeland's direction, been paid by the executor to certain of Vreeland's creditors. There is no evidence that there was any fraudulent purpose in omitting to state this fact to his counsel. The executor seems to have believed that his payment by the direction of Vreeland, then entirely solvent, to other persons, was, in fact, a payment to Vreeland, as directed by the will. Acting on this opinion thus obtained, the executor shortly afterwards canceled the mortgage.

Vreeland continued to pay the interest to Alfred until 1892, when he failed, and the bill was filed in this cause, making the executor, Vreeland, and the children of the testator, defendants, and praying that Vreeland and the executor might be decreed to be personally responsible for the $2,800 and interest, and that Vreeland might be removed as trustee and a new trustee appointed.

In the meanwhile, the executor had become financially insolvent, and pending this suit, during an extension of time to answer, he placed a mortgage to one Allen, upon his farm, securing in great part previously-existing debts.

No defence was made to the bill of complaint in this cause, and a decree *pro confesso* was entered, and on February 25th, 1896, final decree was taken, removing Vreeland and appointing John Wright (the petitioner for the attachment against Walton) as trustee, and directing the executor and Vreeland to pay the $2,800, with interest from August, 1892.

The latter decree being afterwards, on April 21st, 1896, amended, so as to direct the payment by the executor and Vreeland of only the $1,938.76, and interest from August, 1892, with costs to be taxed, and counsel fee of $50. The petitioner, Wright (the new trustee), caused the amended decree to be served on the executor, and prays that he may be attached for disobedience of its command.

The executor admits the service, and by his answer says he is, because of his poverty, unable to obey the decree. The evidence taken on the hearing indisputably proves that the executor has no money wherewith to make the payment decreed to be made, and has no property except that which he now offers to the trustee. He delivered to the petitioner as trustee, on the hearing, in the presence of the court: (1) A deed conveying his interest in his farm; (2) A bill of sale for his horse and two wagons; (3) An assignment of his interest as lessor in the lease of the farm. These include all the property which he has been shown to possess, and these transfers are now in the possession of the trustee, awaiting his acceptance.

The act of contempt alleged is the omission to pay the money when ordered to make payment by decree of this court.

The only answer offered is the declaration that the defendant executor is, because of his poverty, unable to pay the money in compliance with the order of the court.

An attempt was made to influence the action of the court by showing that the complainant, who is entitled to the interest on the fund which has been dissipated, and two of the possible distributees, do not desire the executor to be attached. But it appears that the trustee has the legal right to these moneys, and may be responsible not only to these parties, but also to others who do not appear. The petitioner, as trustee, being entitled to

Walton v. Walton.

receive the fund, has the right to select such method of procedure to secure it as he may be advised and may determine will most fully conduce to that end.

The recent case of *Aspinwall* v. *Aspinwall, 8 Dick. Ch. Rep. 685,* is cited by the respondent's counsel as establishing the rule that a final decree for payment of money due upon contract, will not be enforced by attachment. The petitioner insists that, in the case now before the court, there are special equities attendant upon breaches of trust and fraudulent appropriation of trust funds, which entitle the petitioner to the use of the remedy applied for, and that there are in the proofs indications of a purpose, on the part of the respondent, fraudulently to anticipate the obligatory effect of the decree by disposing of his property, and thus to contemn the authority of the court.

The petitioner also insists that the answer of the respondent cannot be received; that the court should direct an attachment in the first instance because of the failure to obey; that inability to perform can only be set up on application to be liberated; and if, after a proper time of incarceration, it appears that the defendant cannot comply with the decree, he can then be set free.

The rule is that any facts existing when the application to hold for contempt is made, which would support a motion to enlarge from custody, ought to be shown in answer to the application to hold the defendant in contempt. The defendant, on the coming in of the order to show cause, should frankly exhibit the intent which actuates him, although he fails to obey, and state the circumstances which show obedience to be beyond his power. Such a condition, when fairly proven to be actually existing when the decree was made, is to be considered as a showing of cause why the supposed offence was not committed. If it be true that the defendant could not, at any time since the making of the decree for payment, perform it, he certainly could not be in contempt of it, for the existence of a contempt of this character presupposes that, being able to perform the decree, the defendant willfully refuses or omits to obey.

In *Wartman* v. *Wartman, Taney (U. S.) 362,* it was held that the existing excuse relied on must be set up in answer to the

application for the attachment, and would not secure a discharge after contempt.

In *State* v. *Gulick, 2 Harr. 437,* the supreme court held that it was too late for the defendant to excuse himself after the rule to attach was made absolute, unless by some matter which had arisen since the rule was made absolute.

There remains the further question of the sufficiency of the excuse which the defendant makes.

The proceedings in the cause show that the defendant executor has not for many years had any part of the testator's assets in his hands. The decree does not direct him to fulfill the trust which he undertook, nor to deliver any such assets to the trustee. The bill prays, and the decree directs, that the defendant shall be personally responsible, and shall pay certain sums of money to the trustee. It is a decree for the payment of money.

The defendant shows to the court that he has neither money nor property with which to perform the decree.

The object of the application in this case is not the assertion of the dignity of the court, which has not been directly contemned, but it is the redress of the wrong done to the petitioner by the failure to obey the court's decree. The defendant executor, against whom the order to show cause has been made, declares by his answer and testimony that he intends no disrespect to the court by his omission to obey its decree; that his reason for not obeying is that the decree directs him to pay money; that he is utterly insolvent, and has, since the decree was made, had no sufficient property or money to apply in such payment, but he tenders to the new trustee everything that he has, and submits whether he is in contempt for his failure to perform when performance is impossible to him.

This proof of inability to perform is, as above stated, not refuted. It is alleged that the defendant made a mortgage to Allen while his time to answer the bill of complaint was under extension, and that this mortgage was a fraudulent anticipation of the decree, and that he has spent a considerable sum in the defence of the recovery in this suit which should have been

Walton *v.* Walton.

applied in satisfaction of the decree, and that he has declared he would not pay the petitioner's claim.

I think the evidence shows that the mortgage to Allen was made in good faith, in great part to secure pre-existing debts; that the small sum of cash paid the defendant might readily have been used before the decree was made and therefore before it was obligatory upon him, and was too small to suggest a fraudulent purpose in making the mortgage, so that his testimony that he has no money or property sufficient to pay the sum decreed must be taken to be true. At the time the mortgage was made, a defence to the claim set up in the bill was still open, and there is no proof that there was any fraudulent purpose in securing the extension of time, which was done in the ordinary way through counsel, and the transaction has no other coloring than an exercise by the defendant of his right to prefer Allen, whose debts he admitted, rather than the complainant, whose claim he denied and expected at that time to defend.

The defendant's expenditure of money in defending these proceedings, by employing counsel &c. on application to open and amend the decree (in which he was in part successful) and in defence of the petition to attach him, cannot be imputed to him as in contempt of the decree. He had a clear right to make a defence and to employ counsel, even against the final decree, by petition to open or amend, or by appeal, or to answer the petition in this matter to save him his liberty. To hold his expenditures, fairly made for the purpose of exercising this right, to be in contempt would be an interference with an indisputable privilege.

So his declarations pending the proceedings that he would not pay are to be taken in connection with the whole of the proofs as to his state of mind on this subject, and they show that during the period of struggle to lessen the decree or to secure a new hearing, he made these statements.

It is nowhere shown that he had the means to pay and that he refused to apply them to the satisfaction of the decree.

I think the evidence shows that the defendant is unable to make the payment which he is directed to make by the decree,

and that this is a sufficient answer to the petition to hold him as for a contempt for non-performance of the order of the court.

There is no proof of any purpose to defy the court's decree or of a fraudulent purpose to avoid obedience, nor of any special equity which justifies the use of the extraordinary remedy sought. *Aspinwall v. Aspinwall, ubi supra.*

In *Stale* v. *Trumbull, 1 South. 157,* it was held that to justify an attachment for not obeying process of the court it must appear "that the disobedience was of such a nature as to indicate a design to contemn the process or authority of the court." *Dodd* v. *Una, 13 Stew. Eq. 719; Fraas* v. *Barlement, 10 C. E. Gr. 86.*

Inability to perform a decree for payment of money because of the insolvency of the defendant has been held a sufficient ground on which to refuse an attachment.

In *McClure* v. *Gulick, 2 Harr. 343,* it was declared that upon a proper case made, such as insolvency of the defendant clearly established, attachment might be refused. So, also, in *State* v. *Gulick, 2 Harr. 436.*

In *Adams* v. *Raskell and Woods, 6 Cal. *318,* it was held that where, on application for an attachment for not obeying an order to pay money, the defendant proved without contradiction that he had complied as fully as it was in his power with the order of the court, he could not be imprisoned for neglecting to perform an act which was not in his power, and an order imprisoning him was reversed.

I think the prayer of the petitioner must be refused, but without costs as against the petitioner, and without prejudice to a renewal of this application, if any additional facts be presented, or the taking by the trustee of any step to enforce the decree by any other mode than the present petition.